IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF VIRGINIA
LYNCHBURG DIVISION

| | |
|---|---|
| IN THE MATTER OF THE SEARCH OF INFORMATION ASSOCIATED WITH THE CELLULAR DEVICE ASSIGNED CALL NUMBER 434-838-8083 IN THE CUSTODY OR CONTROL OF T-MOBILE. | ) ) ) ) ) ) ) ) **FILED UNDER SEAL**<br><br>Case No. 6:21mj36 |

**AFFIDAVIT IN SUPPORT OF**
**AN APPLICATION FOR A SEARCH WARRANT**

I, Jason Bryant, being first duly sworn, hereby depose and state as follows:

**INTRODUCTION AND AGENT BACKGROUND**

1. I make this affidavit in support of an application for a search warrant under Federal Rule of Criminal Procedure 41 and 18 U.S.C. §§ 2703(c)(1)(A) for information about the location of the cellular telephone assigned call number 434-838-8083 (the "**Target Phone**"), currently being used by Antonio Nigel EDWARDS ("EDWARDS"), whose service provider is T-Mobile ("Verizon"), a wireless telephone service provider headquartered at 4 Sylvan Way, Parsippany, New Jersey, 07921. The Target Cell Phone is described herein and in Attachment A, and the location information to be seized is described herein and in Attachment B.

2. Because this warrant seeks the prospective collection of information, including cell-site location information, that may fall within the statutory definitions of information collected by a "pen register" and/or "trap and trace device," *see* 18 U.S.C. § 3127(3) & (4), the requested warrant is designed to also comply with the Pen Register Act. *See* 18 U.S.C. §§ 3121-3127. The requested warrant therefore includes all the information required to be included in an order pursuant to that statute. *See* 18 U.S.C. § 3123(b)(1).

3. I am a Deputy United States Marshal ("DUSM") with the United States Marshals Service and have been since October 2002. I am an "investigative or law enforcement officer of the United States" within the meaning of 18 U.S.C. § 2510(7)—that is, an officer of the United States who is empowered by law to conduct investigations and to make arrests for offenses enumerated in 18 U.S.C. § 2516. I am charged with enforcing federal laws in all jurisdictions of the United States, its territories, and possessions. I am currently assigned to the Western District of Virginia and a member of the Capital Area Regional Fugitive Task Force for the for the USMS. I have conducted numerous fugitive investigations throughout my career. I have been the affiant on search warrants regarding the tracking and locating of federal fugitives based on their use of cellular phones. Throughout my career, I have encountered numerous methods that fugitives have used to hinder law enforcement efforts to track their whereabouts including, but not limited to, turning the phones on and off when not in use, having the phones subscribed in family members or friends' names, and carrying and using multiple cellular phones on their person.

4. The facts in this affidavit come from my personal observations, my training and experience, and information obtained from other agents and witnesses. This affidavit is intended to show merely that there is sufficient probable cause for the requested warrant and does not set forth all of my knowledge about this matter.

5. Based on the facts set forth in this affidavit, there is probable cause to believe that Antonio Nigel EDWARDS ("EDWARDS") has been indicted by a grand jury and that there is an active warrant for her arrest. There is also probable cause to believe that the location information described in Attachment B will assist law enforcement to locate EDWARDS, who is

2

a "person to be arrested" within the meaning of Federal Rule of Criminal Procedure 41(c)(4), to execute that arrest.

6. The court has jurisdiction to issue the proposed warrant because it is a "court of competent jurisdiction" as defined in 18 U.S.C. § 2711. Specifically, the Court is a district court of the United States that has jurisdiction over the offense being investigated, *see* 18 U.S.C. § 2711(3)(A)(i).

## STATEMENT OF PROBABLE CAUSE

7. The Drug Enforcement Administration is investigating Antonio Nigel EDWARDS regarding a violation of 21 U.S.C § 846 (drug trafficking conspiracy). On August 25, 2021, EDWARDS was indicted by a grand jury in the Western District of Virginia for conspiracy to distribute cocaine, in violation of 21 U.S.C. § 846, and distribution of cocaine, in violation of 21 U.S.C. § 841(a)(1). Criminal Case Number 6:21-CR-1.

8. An arrest warrant was issued for EDWARDS on August 25, 2021. Law enforcement has been unable to apprehend EDWARDS.

9. On September 21, 2021, the Drug Enforcement Administration delegated apprehension to the United States Marshal Service for the Western District of Virginia – Lynchburg Division.

10. In February 2021, the Drug Enforcement Administration conducted a controlled purchased of cocaine from EDWARDS in the Western District of Virginia. During that controlled purchase EDWARDS provided Confidential Source #1 (CS-1) with cocaine. During that controlled purchase, EDWARDS was observed operating vehicle owned by a rental agency. Law enforcement determined that the vehicle was rented by "P.P." during the timeframe in which that controlled purchase took palace.

11. Law enforcement queried EDWARD's Facebook profile. Portions of that profile were open for public view. Law enforcement reviewed posts on that profile and determined that P.P. was a "friend" of EDWARDS. In July 2021, EDWARDS posted a photograph of P.P. and posted a "post" describing P.P. as a best friend.

12. In May 2021, law enforcement conducted an interview of a cooperating defendant ("CD-1"). CD-1 is awaiting trial on federal drug trafficking offenses. CD-1 provided statements to law enforcement against CD-1's penal interest. CD-1 advised law enforcement that EDWARDS was a source of supply for CD-1 since approximately August 2020. CD-1 advised that CD-1 communicated with EDWARDS via cellular phone to facilitate the cocaine transactions.

13. In August 2021, law enforcement conducted an interview of a cooperating defendant ("CD-2"). CD-2 is awaiting trial on federal tracking offenses. CD-2 provide statements to law enforcement against CD-2's penal interest. CD-2 advised law enforcement that EDWARDS was a source of supply of cocaine. CD-2 advised law enforcement that CD-2 assisted EDWARDS with the distribution of cocaine. CD-2 advised law enforcement that EDWARDS used a cellular phone to facilitate narcotic sales.

14. In September 2021, law enforcement received information from a Confidential Source ("CS-2") that EDWARDS was actively utilizing cellular phone number 434-838-8083 (**Target Phone**). CS-2 had communicated with EDWARDS using the **Target Phone**. CS-2 has provided intelligence to law enforcement that led to the arrest of another. CS-2 has also provided credible information to law enforcement in another criminal investigation.

15. In September 2021, law enforcement served an Administrative Subpoena on T-Mobile for subscriber and toll records of the **Target Phone**. Law enforcement determined that

the subscriber of the **Target Phone** was P.P. Law enforcement determined that the **Target Phone** was activated in December 2019.  Law Enforcement determined that the **Target Phone** was still active as of September 21, 2021.

16. Based on the totality of the investigation there is probable cause to believe EDWARDS is currently using the **Target Phone**. In my training and experience, individuals commonly carry cellular phones on their person. Therefore, the **Target Phone** will likely reveal important location information concerning EDWARDS's whereabouts.

17. In my training and experience, I have learned that T-Mobile is a company that provides cellular telephone access to the general public.  I also know that providers of cellular telephone service have technical capabilities that allow them to collect and generate information about the locations of the cellular telephones to which they provide service, including E-911 Phase II data, also known as GPS data or latitude-longitude data and cell-site data, also known as "tower/face information" or cell tower/sector records**.**  E-911 Phase II data provides relatively precise location information about the cellular telephone itself, either via GPS tracking technology built into the phone or by triangulating on the device's signal using data from several of the provider's cell towers.  Cell-site data identifies the "cell towers" (i.e., antenna towers covering specific geographic areas) that received a radio signal from the cellular telephone and, in some cases, the "sector" (i.e., faces of the towers) to which the telephone connected.  These towers are often a half-mile or more apart, even in urban areas, and can be 10 or more miles apart in rural areas.  Furthermore, the tower closest to a wireless device does not necessarily serve every call made to or from that device.  Accordingly, cell-site data is typically less precise that E-911 Phase II data.

18.     Based on my training and experience, I know that T-MOBILE can collect E-911 Phase II data about the location of the Target Cell Phone, including by initiating a signal to determine the location of the **Target Cell Phone** on T-Mobile's network or with such other reference points as may be reasonably available.

19.     Based on my training and experience, I know that T-Mobile can collect cell-site data about the **Target Cell Phone**. Based on my training and experience, I know that for each communication a cellular device makes, its wireless service provider can typically determine: (1) the date and time of the communication; (2) the telephone numbers involved, if any; (3) the cell tower to which the customer connected at the beginning of the communication; (4) the cell tower to which the customer connected at the end of the communication; and (5) the duration of the communication. I also know that wireless providers such as T-Mobile typically collect and retain cell-site data pertaining to cellular devices to which they provide service in their normal course of business in order to use this information for various business-related purposes.

## AUTHORIZATION REQUEST

20.     Based on the foregoing, I request that the Court issue the proposed search warrant, pursuant to Federal Rule of Criminal Procedure 41 and 18 U.S.C. § 2703(c).

21.     I further request, pursuant to 18 U.S.C. § 3103a(b) and Federal Rule of Criminal Procedure 41(f)(3), that the Court authorize the officer executing the warrant to delay notice until 90 days after the collection authorized by the warrant has been completed. There is reasonable cause to believe that providing immediate notification of the warrant may have an adverse result, as defined in 18 U.S.C. § 2705. Providing immediate notice to the subscriber or user of the **Target Cell Phone** would seriously jeopardize the ongoing investigation, as such a disclosure would give that person an opportunity to destroy evidence, change patterns of behavior, notify

confederates, and flee from prosecution. *See* 18 U.S.C. § 3103a(b)(1). As further specified in Attachment B, which is incorporated into the warrant, the proposed search warrant does not authorize the seizure of any tangible property. *See* 18 U.S.C. § 3103a(b)(2). Moreover, to the extent that the warrant authorizes the seizure of any wire or electronic communication (as defined in 18 U.S.C. § 2510) or any stored wire or electronic information, there is reasonable necessity for the seizure for the reasons set forth above. *See* 18 U.S.C. § 3103a(b)(2).

22. I further request that the Court direct T-Mobile to disclose to the government any information described in Attachment B that is within the possession, custody, or control of T-Mobile. I also request that the Court direct T-Mobile to furnish the government all information, facilities, and technical assistance necessary to accomplish the collection of the information described in Attachment B unobtrusively and with a minimum of interference with T-Mobile's services, including by initiating a signal to determine the location of the Target Cell Phone on T-Mobile's network or with such other reference points as may be reasonably available, and at such intervals and times directed by the government. The government shall reasonably compensate T-MOBILE for reasonable expenses incurred in furnishing such facilities or assistance.

23. I further request that the Court authorize execution of the warrant at any time of day or night, owing to the potential need to locate the **Target Cell Phone** outside of daytime hours.

## OATH

The information in this affidavit is true to the best of my knowledge and belief.

Respectfully submitted,

                               *s/Jason Bryant*

                                Jason Bryant, Deputy United States Marshal
                                United States Marshals Service

Received by reliable electronic means and sworn and attested to by telephone on this  24th day of September 2021.

*Robert S. Ballou*
_____
ROBERT S. BALLOU
UNITED STATES MAGISTRATE JUDGE